JOHN B. VOYER v. DISPATCH PRINTING COMPANY.[1]

Nov. 14, 1895.

Nos. 9430—(42).

**Injury to Employe—Negligence—Scope of Employment.**

In an action by a servant against his master for damages for personal injury, *held*, on the evidence, it was a question for the jury whether or not the master was negligent, and whether or not the servant at the time of his injury was acting within the scope of his employment.

Appeal by plaintiff from an order of the district court for Ramsey county, Kerr, J., denying a motion for a new trial. Reversed.

*Enoch Johnson* and *James E. Trask*, for appellant.

*Munn, Boyesen & Thygeson*, for respondent.

CANTY, J. Defendant is the publisher of a daily newspaper in St. Paul. Plaintiff was in its employ for five or six days, mostly in assisting in setting up a new printing press in its press room, in the basement of its printing establishment. There were at the time two other presses already in use in this press room. At one of these presses there was used an electric lamp, to which were attached two electric wires, insulated, and, as we understand the evidence, bound together. These wires extended from the hand lamp where it ordinarily hung, over the press, down into a shallow pit under the press, and were there wound into a coil, which hung on a peg on the side of the pit, and again extended from this coil to the wall of the room, and were there connected with other electric wires. One Cameron was the pressman who operated this press. One Egan was the foreman of the press room, under whose superintendence plaintiff was employed. At the time in question plaintiff was at work on the new press, when he was called over by Cameron to the press of which Cameron was pressman, and told to hand the electric hand lamp to Cameron, under one part of this press where Cameron was at work. He went into the pit under the press, and took the lamp, which then lay under one side of the press, and reached it to Cameron, but the wire attached to the lamp was too short to permit the lamp to be

[1] Reported in 64 N. W. 1138.

taken to the desired place. Then plaintiff seized the wire in his hand for the purpose of uncoiling it off of the peg, and, while proceeding to do so, received a shock of electricity from the wire, which prostrated him, burned his hands, face, and arm severely, and also burned his clothes.

This action is brought to recover damages for this injury. It is claimed by plaintiff that he was injured in the course of his employment, by reason of defendant's negligence in permitting this wire to be uninsulated in parts and defectively insulated in other parts, and in permitting a quantity of water to remain in the pit, which gave the person standing in the water and coming in contact with the wire a more complete connection with the ground, causing him to receive a more severe shock from the wire. At the close of the trial the court ordered a verdict for defendant, and from an order denying his motion for a new trial plaintiff appeals.

We are of the opinion that there was sufficient evidence to sustain a verdict for plaintiff, and that the court below erred in taking the case from the jury. It sufficiently appears from the evidence that this pit is a place where defendant's employès were accustomed to go and handle this lamp and wire as plaintiff had handled them, and we are of the opinion that the evidence tends to prove that defendant was negligent in permitting the insulation of the wire to be defective and out of repair. This proposition is not strenuously controverted by defendant's counsel, but it is contended that plaintiff at the time of his injury was acting without the scope of his employment, and was a mere volunteer in going into the pit and handling the lamp and wire. We cannot agree with counsel that the evidence conclusively shows this to be the case. It is true that Cameron was a mere fellow servant, who had no authority to change the scope of plaintiff's employment, or direct him to go into the pit and handle the wire, if that was without the scope of his employment. But whether it was within the scope of his employment or not must be determined from all the evidence and circumstances in the case.

Plaintiff testified that he was employed by the foreman, Egan. He further testified as follows:

"Q. At the time he hired you, what instructions did he give you as to your duties? What were you to do there?

"A. I was to help around that new press; to help on that new

press,—the press they were putting up,—up to Thursday, in the evening, when he laid off a gentleman by the name of Nolan, and the other, Robert Lone; and I was kept on, and in the morning was called over to the old press." "In the morning I came, and I was told to help around the press room, which was my instructions from Mr. Egan." "Friday morning up to about eleven o'clock' we were working on that new press,—finishing that."

He testified that a few days before it had rained considerably, and the water came down into the press room. He further testified: "I couldn't say I saw any of this water going into the pit. We had to work there. We were moving paper at the time. As soon as the water started running we had to move paper, and some of them were sweeping. They were sweeping the water back." On cross-examination he testified:

"Q. You were employed specifically to help put up that new press, weren't you?

"A. Yes, sir.

"Q. Weren't you standing right by the new press when Cameron called you over to hand him the light?

"A. I was.

"Q. You worked there all the morning of Friday until Cameron called you?

"A. Yes, sir; not all the morning.

"Q. Well, in connection with it,—either right on it, or bringing things to it?

"A. Yes, sir.

"Q. Now, aside from that one act, you were working all the time either on or in connection with the new press?

"A. Yes, sir.

"Q. But yet you say that Mr. Egan told you Thursday night that you were to work around the press room?

"A. Yes, sir.

"Q. What did you understand by that?

"A. For staying around, because he laid Mr. Nolan and Mr. Lone off.

"Q. You came back in the morning, and were working around the putting up the new press?

"A. And putting up the new press.

"Q.: How came he to tell you he wanted you to work around the press room?

"A. They were laid off, and the machine was pretty near built.

"Q. But it was work entirely on the new press?

"A. They hadn't. They had been working also on the old press, moving out papers, and Mr. Lone was working on the machine during the week."

It is true that this evidence is contradicted as to the orders he received from Egan, and on some other points, but the question of veracity thus raised is for the jury. Egan was at the new press when plaintiff was called away from that press by Cameron, but he testifies that he did not hear Cameron call plaintiff away. Cameron went to plaintiff's relief, and was himself also shocked by the electricity, and Egan testified that when he heard Cameron "hollering" he seized a hatchet and cut the wire. The plaintiff is a printer by trade. All of these presses were being used, or in course of construction to be used, by defendant, in one branch of its business. The same foreman had charge of all of this branch of the business, and all of the employés in this press room were under his immediate direction. There does not appear to have been any very clear, strong, or distinct line drawn between the business of setting up of the new machine and that of operating the old ones, or any very marked difference in the character of the trade or calling required in the employés in each part of the work. Under the evidence and all the circumstances of the case, we are clearly of the opinion that it was a question for the jury whether or not plaintiff was, at the time of his injury, acting within the scope of his employment.

The order appealed from is reversed, and a new trial ordered.